IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

RONNIE LEE FRYE,

           Plaintiff,

v.                                CIVIL ACTION NO. 5:04-0650
                                  (Lead Case - Consolidated with
BOXLEY AGGREGATES OF         5:04-0651, 0652, 0653 and 5:05-0231)
WEST VIRGINIA, L.L.C.,
a foreign corporation,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Boxley Aggregates of West Virginia's (BAWV) motion for summary judgment (Doc. 49). Defendant seeks summary judgment on the ground that Plaintiffs cannot provide sufficient evidence of causation. In their response, Plaintiffs argue that their own testimony provides circumstantial evidence of causation sufficient to defeat summary judgment. After reviewing the motions and taking into consideration the arguments by the parties, the Court **GRANTS** Defendant's motion for summary judgment.

**I.**     **Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## II. Factual Background

This case arises from five separate actions filed by Plaintiffs, which have been consolidated before this Court. The Plaintiffs in this case are Doris Frye, Ronald Frye Sr., Ronnie Frye Jr., Connie Sue Chapman, and Mary Vaughan. BAWV operates a quarry near the Plaintiffs' homes. Each of the Plaintiffs' complaints contains the same claims for strict liability for ultra hazardous blasting activity, and seek repairs to real and personal property, as well as for annoyance and inconvenience, loss of enjoyment and punitive damages. Because in this motion Defendant only argues that Plaintiffs cannot prove causation, the Court will only review the facts as related to causation.[1] Plaintiffs have no expert to testify regarding causation, and instead rely only upon their

---

[1] Defendant also filed a motion for partial summary judgment on Plaintiffs' intentional tort and negligence claims, in addition to a statute of limitations claim (Doc. 48). Because the Plaintiffs did not dispute that motion, the Court granted partial summary judgment on those issues (Doc. 71).

own testimony as circumstantial evidence of causation. Below is a brief summary of the Plaintiffs' collective testimony.[2]

The Plaintiffs' homes are the following distance from the quarry: Ms. Frye resides 1.37 miles away; Mr. Frye Sr. resides .91 miles away; Mr. Frye Jr. resides .94 miles away; Ms. Chapman resides .89 miles away; and Ms. Vaughan resides 2.39 miles away. These distances are not in dispute. Plaintiffs' expert, Mr. Nick Brash, has provided reports and testimony regarding the alleged damage, and the estimated cost of repair. Each of the Plaintiffs alleged some or all of the following damages: cracks in the foundation, settling or movement of the structure, buckling of trim, trim pulling away from the frame, cracks in the interior walls, windows and doors that stick, hardwood floors separating, loose kitchen cabinets, and sagging roof and deck. Each of the Plaintiffs noticed damages they associate with the blasting at different times. For example, Mr. Frye Sr. first noticed damages six to seven years ago. Mr. Frye Jr. first noticed damages about two years ago. Ms. Vaughan noticed most of the damage about three years ago. Some of the alleged damage has increased with continued blasting. Mr. Frye Sr. testified that cracks in the foundation of his home began as hairline cracks, and have expanded to about half an inch. Ms. Chapman testified that a crack in her dining room ceiling has gotten wider, and that several days after one blast, her kitchen cabinet fell off the wall.

The Plaintiffs testified that the blasts are very loud, and sound like thunder or an earthquake. During the blasts, Plaintiffs' houses shake, disturbing personal property within the houses. For example, Mr. Frye Sr. testified that the water in his aquarium shakes during a blast. Mr. Frye Jr. and

---

[2]Both the Defendant and the Plaintiffs have thoroughly detailed the deposition testimony as to causation and damages of each of the Plaintiffs. *See* Def. Mot. for Summ. J. at 3-7.; Pl. Resp. in Opp. at 2-6.

Ms. Frye testified that items on shelves move toward the edge due to vibrations.  Ms. Frye also testified that her dining room chandelier shakes.  None of the Plaintiffs can testify to any specific date or specific blasting which caused any of the alleged damage.  Nevertheless, Plaintiffs claim that the blasts have increased in volume and force in the last year and a half.  Plaintiffs did not notify BAWV or make any complaint regarding the alleged damage from the blasting.

In response to Plaintiffs' testimony, Defendant argues that undisputed scientific facts prove that BAWV's blasting could not have caused the alleged damages.  It argues that BAWV's blasting levels, as evidenced by seismographic charts, were well below the blasting limits capable of causing structural damage established by both the West Virginia and the United States Bureau of Mines (USBM).  Defendant points out that it has received no Department of Energy violations with respect to blasting, and it is in compliance with all guidelines and applicable state laws since it took control of the quarry in 2002.  Defendant further provided reports from experts who opined that the property damage was caused by substandard construction, aging, weather and/or soil conditions.

## III.    Analysis

In its motion, Defendant argues that summary judgment is appropriate since Plaintiffs, having the burden of proof on the element of causation, cannot make a showing sufficient to establish that element.  In response, Plaintiffs argue that, in blasting cases, causation of blasting damage must often be proven through circumstantial evidence.  *See Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.*, 165 S.E.2d 113, 122 (W. Va. 1968).  Accordingly, Plaintiffs argue that their testimony is sufficient to create a question of fact for the jury, thereby defeating summary judgment.  Both parties cite to the same West Virginia cases to support their positions.

In *Whitney v. Ralph Myers Contracting Corp.*, the plaintiffs sought the recovery of damages to their homes and property allegedly the result of blasting conducted by defendant on behalf of the state in constructing a highway. 118 S.E.2d 622, 622 (W. Va. 1961). Due to the construction of the highway, plaintiffs moved their houses to a new location, approximately 1,800 feet from the nearest point of the blasting. *Id.* at 623. After the plaintiffs moved into the house on January 15, 1959, cracks began to appear in the basement walls, increasing in size and number until April 10, 1959 when the basement wall actually collapsed. *Id.* at 624. At the trial, plaintiffs offered the testimony of several witnesses who testified to the nature and severity of the blasting vibrations, and to the complaints made to the defendant. *Id.* No witness was able to testify to seeing any crack or other damage appear simultaneously with experiencing any vibration. *Id.* Defendant offered testimony suggesting that the basement walls were not properly constructed, and that the blasting was done according to regulations. *Id.* The jury returned a verdict for plaintiffs and defendant appealed.

Defendant sought reversal of the judgment on the grounds that plaintiffs failed to show any causal connection between the blasting and the damages. *Id.* The court disagreed, and held that the facts were sufficient to permit a jury to infer that the damages were the direct result of defendant's blasting. In regards to what the plaintiff needed to show to prove causation, the court stated that, "[p]laintiffs were not required to show that the damages to the basement walls were the result of any particular or isolated explosion, but only to establish facts that would fairly raise an inference as to the cause thereof." *Id.* at 624. The court explained that the fact that the blasting occurred "at or in the vicinity of plaintiffs' property" coupled with damages noticed contemporaneously with blasting vibrations was enough to raise an inference. *Id.* at 624-625; *see also id.* (citing *Scranton v. L.G. De Felice & Son, Inc.*, 79 A.2d 600, 6001 (Conn. 1951))("The finding that the blast in question was

followed immediately be a marked and noticeable shaking of the plaintiff's buildings and that cracks then appeared in the exterior and interior plaster is ample under the circumstances to justify the conclusion that the cracks resulted from the blast."). Accordingly, the court affirmed the judgment.

The other cases cited by both the parties apply the standard articulated in *Whitney*. In *Frye v. Kanawha Stone Co., Inc.*, two homeowners brought an action to recover for alleged damages to their homes caused by defendant's blasting during a highway project. 505 S.E.2d 206, 208 (W. Va. 1998). Although the blasting continued on an intermittent basis from late 1992 to June 1993, the case involved a particular blast on March 25, 1993, at a site 962 feet from the plaintiffs' home. *Id.* In addition to claiming that the blast caused windows and cabinets to shake, one of the plaintiffs, who had a habit of inspecting his property after large blasts, claimed that numerous cracks suddenly appeared in the walls. *Id.* He also testified that he had immediately complained to defendant about the damage. *Id.* At the trial, plaintiffs introduced witnesses who had observed the cracks, one of whom testified that he had helped the plaintiffs paint their house a year before, and the cracks were not present. *Id.* The defendant offered testimony from a blasting specialist who testified that the vibrational level recorded by seismograph on the day in question was insufficient to cause damage to the plaintiffs' home. *Id.* The specialist also submitted photographs which he claimed showed paint in the alleged cracks, indicating that they were present when the home was painted a year earlier. *Id.* Plaintiffs offered their own photographs which they claimed accurately depicted the cracks. *Id.* The defendant also proffered expert testimony which stated that the damage to plaintiffs' home was preexisting and naturally occurring. *Id.*

Upon review, the court refused to reverse the trial court's decision to deny defendant's motion for a directed verdict or a new trial. Defendant had argued that the trial evidence was such

a nature to establish as "uncontroverted and undisputed scientific fact its claim that its blasting could not have damaged the [plaintiffs'] home." *Id.* at 209. In reviewing the submitted evidence, the court applied the *Whitney* standard, requiring plaintiffs only to establish facts that would fairly raise an inference of the cause of damage. *Id.* In this case, plaintiffs "presented testimony concerning the May 25, 1993, blasting, the lack of damage to their home before this event, and the appearance of cracks following this episode." *Id.* The court noted that while defendant submitted scientific and expert testimony, plaintiffs also submitted adequate lay testimony to contradict defendant's evidence. *Id.* Accordingly, the court held that the trial court acted properly by refusing to set aside the jury verdict. *Id.; see also Bartley v. D.L. Morgan, Jr., Inc.*, 516 S.E.2d 513 (W. Va. 1999)(reversing the grant of summary judgment and finding adequate conflicting evidence of causation of damage based upon plaintiff's affidavit which stated that in late June 1995 he was in his place of business when he felt a series of explosions from defendant's sewer line project; a week or two later, he noticed ridges that had formed under the carpet, and upon removal, saw that fill material in the floor had turned to rubble by the blasting).

A review of these cases reveals that each shares key facts in determining whether there exists adequate circumstantial evidence of causation. First, the cases that permitted the plaintiffs' case to go to trial emphasized the close distance from plaintiffs' properties to the blasting, which allegedly caused damaged. In the *Whitney* decision, the plaintiffs' homes were approximately 1,800 feet from the nearest blasting point. The court determined that such a distance was "at or in the vicinity" of plaintiffs' property. The plaintiff's home in the *Frye* decision was even closer, at approximately 962 feet. Other jurisdictions deciding similar blasting cases also emphasize a close distance. *See Spano v. Perini*, 250 N.E.2d 31 (N.Y. 1969)(plaintiffs' homes 125 feet from blasting site); *Silcox v. Smith*,

487 S.W.2d 652 (Tenn. 1972)(plaintiffs' homes 200-250 yards from blasting site). While the Court recognizes that there is no bright line determination that a certain distance from a blasting site is "too far" for recovery, distance from the blasting site to the property is a relevant piece of circumstantial evidence when considering a plaintiff's case.

Second, in the cases that proceeded to trial, plaintiffs testified to damage occurring contemporaneously with blasting. While the *Whitney* court held that plaintiffs do not need to show that alleged damage immediately followed a particular or isolated explosion, in that case, the court considered the fact that the plaintiffs noticed damage contemporaneously with the blasting as one of the facts to fairly raise an inference of causation. In that case, the alleged damage from blasting had occurred within a three month time period. The *Frye* case, which Plaintiffs rely heavily upon, did, in fact, involve an isolated blasting event. The *Bartley* case involved a plaintiff noticing damage one to two weeks later. While plaintiffs do not need to provide evidence that they noticed damage immediately after a single blasting, plaintiffs must be able to provide evidence of damage occurring contemporaneously with the blasting operation.

Taking this all into consideration, the Court finds that Plaintiffs have not offered sufficient evidence to support a genuine issue of material fact as to causation. The closest distance of any of the Plaintiffs' residences from the blasting site is approximately .90 mile with the farthest being 2.39 miles. The distance from the blasting site to the homes are well past any of the distances held to be "in the vicinity" of the blasting zone in the other cases discussed above. Plaintiffs do not dispute these distances even though they also claim that the blasting feels like it continues to get closer to their homes.

Plaintiffs' attorney readily acknowledges that none of the Plaintiffs can testify to damages contemporaneous to blasting. None of the Plaintiffs have any type of documentation of the blasts and corresponding damages.[3] Unlike the plaintiffs in both *Frye* and *Whitney*, no complaints were made to Defendant after the damage was noticed. Each of the Plaintiffs can only testify to feeling vibrations over a period of years, and then testify to damages which they believe were caused by the blasting. Only one Plaintiff, Ms. Chapman, possibly provides any testimony to attribute damage contemporaneous to a blast. Ms. Chapman testified that she heard a blast one day, left town, and two days later, while her son was staying at her home, the kitchen cabinet fell off the wall. She also claims that her son monitors a crack in her dining room ceiling, and must clean up pieces of the ceiling that fall to the floor after a blast as the crack widens. However, the testimony of these alleged events while the Plaintiff was not personally at home and did not personally observe, proves weak when compared with the complete lack of any other evidence tending to show causal connection regarding any other type of damage.

The inability of Plaintiffs' to offer such testimony creates an even higher burden when considering that the type of damage Plaintiffs allege are typical of general wear and tear on property. Defendant has offered expert reports which state that the property damage was caused by substandard construction, aging, weather and/or soil conditions, and not by blasting. The fact that a crack widens or that a kitchen cabinet falls may be the result of aging or substandard construction, as suggested by Defendant. Without any testimony of damage appearing contemporaneously to blasting, Plaintiffs can offer no evidence to genuinely dispute these reports.

---

[3]A few of the Plaintiffs testified at their depositions that either they or another person took photographs of some of the alleged damage, but even these photographs were never submitted as part of the record.

This Court recognizes that "[t]he testimony of expert witnesses of an issue is not exclusive, and does not necessarily destroy the force or credibility of other testimony." *State v. McWilliams*, 352 S.E.2d 120, 129 (W. Va. 1986). However, in this case, the Plaintiffs provide no evidence to dispute the Defendant's expert reports, as did the plaintiffs in *Frye* and *Whitney*. The Plaintiffs had identified an expert, Mr. Brash, to testify that the blasting at Defendant's facility was the proximate cause of the property damage to the Plaintiffs' home. At his deposition, Mr. Brash was apparently unable to provide any expert testimony regarding causation. In response to a motion to exclude, Defendant acknowledged that Mr. Brash could not provide expert testimony regarding causation. Accordingly, before the Court is scientific expert testimony and reports submitted by Defendants which includes seismographic records and compliance with state and federal regulations, and no evidence submitted by Plaintiffs to dispute these issues whether by expert or lay testimony.

Plaintiffs had the opportunity during discovery, and in response to this motion for summary judgment, to dispute this expert testimony. For example, several of the Plaintiffs testified that since Defendant took control of the quarry, the blasting has gotten closer to their property, more frequent or stronger. Plaintiffs could have submitted seismographic records or other evidence to support their anecdotal testimony that, in fact, the blasting did get closer, stronger and more frequent. Instead of offering this type of evidence, the Plaintiffs chose to offer only their lay testimony to prove causation. However, the fact remains that nothing in Plaintiffs' testimony genuinely disputes the defense experts' conclusion as to causation.

**IV. Conclusion**

After reviewing all the submitted evidence and taking into consideration argument from counsel, the Court concludes that there is no genuine issue as to causation. Accordingly, the Court

**GRANTS** Defendant's motion for summary judgment (Doc. 49), and **DISMISSES** this case from the docket of the Court.

The Court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:  June 27, 2006

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE